UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>v.<br><br>MATTHIAS HADDOCK,<br><br>        Defendants. | 3:12-cr-0112-LRH-VPC<br><br>ORDER |

This written order follows the court's minute order denying defendant Matthias Haddock's ("Haddock") challenge to his Presentence Report. Doc. #49.[1] In his sentencing memorandum, Haddock challenges Paragraph 36 (increasing his offense level by 5 points based upon a pattern of activity pursuant to U.S.S.G. § 2G2.2(b)(5)) and Paragraph 76 (concluding that the mandatory minimum term of imprisonment is 15 years and the maximum term is 40 years pursuant to 18 U.S.C. § 2252A(b)(1)). *See* Doc. #35. Addressing them below in reverse order, the court finds against Haddock and in favor the Government on both challenges.

**I.     Mandatory Minimum Sentencing Enhancement**

On July 24, 2013, Haddock pled guilty to receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). Doc. #29. A conviction under § 2252A(a)(2) ordinarily calls for a term of imprisonment of not less that five (5) years and not more than twenty (20) years. *See* 18 U.S.C. §

---

[1] Refers to the court's docket entry number.

2252A(b)(1). However, if a person convicted under § 2252A(a)(2) has a prior qualifying conviction, the statute requires that the defendant be sentenced to a term of imprisonment of not less than fifteen (15) years and not more than forty (40) years. *Id*.

In his sentencing memorandum, Haddock argues that his prior 2003 Oregon conviction for encouraging sex abuse in the first degree in violation of O.R.S. § 163.684 does not constitute a prior qualifying conviction under 18 U.S.C. § 2252A(b)(1). *See* Doc. #35. The court disagrees. The court has reviewed the documents and pleadings on file in this matter, including counsel's arguments and the parties' sentencing memorandums, and finds that Haddock's prior state conviction constitutes a prior qualifying conviction for purposes of the sentencing enhancement.

Generally, to determine whether a criminal defendant's prior conviction constitutes a qualifying predicate offense that triggers the enhanced mandatory minimum sentence, the court must apply the categorical approach explained in *Taylor v. United States*, 406 U.S. 575, 600-602 (1990). As addressed in *Taylor*, the categorical approach requires the court to examine: (1) the facts of the conviction; and (2) the statutory definition of the prior offense. *Id*. at 602. The reviewing court simply compares the specific elements of the state criminal offense with the predicate offense that is defined under the federal statute. *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007). Thus, to determine if Haddock's prior conviction under O.R.S. § 163.684 meets the definition of the predicate sex offense under § 2252A(b)(1), the court must first examine the definition of the predicate offense in the federal statute. *Taylor*, 406 U.S. at 602. Then, the court must look to the Oregon statute and compare its definition to the relevant portion of the federal statute to determine if the conduct prohibited by the federal statute also violates the state statute. *Sinerius*, 504 F.3d at 743. The court shall address each element below.

**1. Definition of the Federal Offense**

The relevant federal predicate offense is contained within 18 U.S.C. § 2252A(b)(1) and is defined as: "a prior conviction . . . under the laws of any State relating to . . . the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography."

2

This statute is modified by the "related to" language which means "to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Sinerius*, 504 F.3d at 743 (citing *Morales v. Trans. World Airlines*, 504 U.S. 374, 383 (1992)). Thus, the sentencing enhancement under § 2252A(b)(1) applies not only to state convictions that are the equivalent of the federal offense, but also to those offenses that relate to, bear upon, or are associated with the underlying offense.

Further, the term "child pornography" is generally defined as "[m]aterial depicting a person under the age of 18 engaged in sexual activity." *See* Black's Law Dictionary (9th Ed. 2009). Federal law specifically defines "child pornography" as "any visual depiction . . . of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). "Sexually explicit conduct" is further defined under § 2256 as sexual intercourse; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area. 18 U.S.C. § 2256(2)(A).

**2. Definition of Oregon's Statute**

Under Oregon law, a person commits the crime of encouraging child sexual abuse in the first degree if that person "did unlawfully and knowingly develop, duplicate, publish, print, disseminate, exchange, display, finance, attempt to finance and sell a photograph, motion picture and videotape of sexually explicit conduct involving a child while knowing and being aware of and consciously disregarding the fact that the creation of the visual recording of sexually explicit conduct involved child abuse." O.R.S. § 163.684. "Sexually explicit conduct" is defined under Oregon law as actual or simulated sexual intercourse; genital contact; penetration; masturbation; sadistic or masochistic abuse; or lewd exhibition of sexual or other intimate parts. O.R.S. § 163.665(3). Further, a "child" under Oregon law is defined as "a person who is less than 18 years of age." O.R.S. § 163.665(1). Finally, a "visual recording" is defined to include, but not limited to, "photographs, films, videotapes and computer and other digital pictures, regardless of the manner in which the recording is stored." O.R.S. § 163.665(3).

### 3. Statute Comparison

Comparing these two statutes, the court finds that a conviction under O.R.S. § 163.684 is necessarily a conviction that relates to the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography. The Oregon statute criminalizes the knowing possession with the intent to distribute, sale, disseminate, distribute, or transport any depiction of sexually explicit conduct with a child. This is virtually identical to the conduct prohibited by the federal offense which triggers the enhanced minimum sentence. *See* 18 U.S.C. § 2252A(b)(1) (covering conduct "relating to . . . the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography."). Moreover, looking at the definitions for similar terms in the two statutes, the court finds that the same criminal conduct is prohibited by each statute. Both statutes define a child or minor as a person under 18 years of age. *See* 18 U.S.C. § 2256(1); O.R.S. § 165.665(1). Further, both statutes define "sexually explicit conduct" and "visual depiction" in virtually identical fashion. *Compare*, 18 U.S.C. § 2256(2) with O.R.S. § 163.665(3); 18 U.S.C. § 2256(5) with O.R.S. § 163.665(4).

In opposition, Haddock argues that because the Oregon statute does not use the term "child pornography", the court cannot conduct a categorical analysis under *Taylor*, and therefore, his prior state conviction cannot qualify as a prior conviction for the sentencing enhancement.

Haddock's argument is based on the faulty assumption that both the federal and state statute must be identical for the court to perform the categorical approach under *Taylor*. However, the Ninth Circuit has expressly rejected Haddock's contention that a state conviction must match or be identical to the corresponding federal crime in order to be categorically deemed a qualifying predicate conviction. *See United States v. Farmer*, 627 F.3d 416, 420-22 (9th Cir. 2010). Instead, the court must use the ordinary and common meaning of the statutory terms when conducting the analysis. *Sinerius*, 504 F.3d at 743. The ordinary and common meaning of the term "child pornography" is simply "[m]aterial depicting a person under the age of 18 engaged in sexual activity." Black's Law Dictionary (9th Ed. 2009). This is the same type of material the Oregon

4

statute prohibits from development, duplication, etc. See O.R.S. § 163.684.

More importantly, however, is the fact that Haddock's argument completely ignores the "relating to" language within the federal statute which means "to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Sinerius*, 504 F.3d at 743. As such, the court finds that the sentencing enhancement under § 2252A(b)(1) applies not only to state convictions that are the equivalent of the federal offense, but also to those state convictions that relate to, bear upon, or are associated with the underlying generic offense. Haddock's prior conviction for knowingly developing, duplicating, publishing, printing, disseminating, exchanging, displaying, financing, attempting to finance, and/or selling sexually explicit conduct involving a child "relates to" the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography as defined under the federal statute. Therefore, the court finds that Haddock's prior conviction under Oregon law constitutes a prior predicate conviction under the federal statute for purposes of the sentencing enhancement.

**II.     The "Pattern of Activity" Enhancement Pursuant to USSG § 2G.2(b)(5) is Applicable as a Specific Offense Characteristic**

USSG § 2G.2(b)(5) provides that "if the defendant engaged in a pattern of activity involving sexual abuse or exploitation of a minor, increase [the base level calculation] by five levels." The commentary to this guideline provision defines "pattern of activity" as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or © resulted in a conviction for such conduct.

The court has considered the local law enforcement reports and related evaluations submitted as exhibits in the Government's and defense's sentencing memorandums. The court specifically adopts and finds in accord with the history as set forth in Paragraph 46 on pages 10 and 11 of the Presentence Report in this matter. In relevant part, it provides, and the court so finds as follows:

5

In addition, an investigation involving the child sexual abuse of a three year old child by Haddock, was also initiated by the Oregon City Police Department in 2001. On May 24, 2001, Lisa Harris reported that her daughter, B.H. had been sexually molested by Haddock. According to Ms. Harris, her daughter had been engaging [in] a variety of strange, sexual type behaviors - including humping her stuffed bunny rabbit. When B.H. was asked if anyone had played with her like that, B.H. replied, "yes" and then stated "Matt" was the person who did. B.H. then indicated that Haddock had also fondled her genitals by rubbing his hand back and forth and he had used his tongue to lick her private areas. B.H. demonstrated to Ms. Harris what Haddock did to her by moving her hips back and forth and panting. B.H. stated that "Matt do it like the daldy do. The lady in the video." B.H. indicated that this happened at her grandmother's house, where Haddock was living at the time. At some point, Ms. Harris videotaped B.H. engaging in these behaviors to provide evidence that her allegations were not fabricated.

Between May 2001, and October 2002, various additional individuals reported observing similar strange behaviors and outcries of abuse by B.H. regarding Haddock's sexual abuse. For example, B.H.'s aunt, maternal grandmother, babysitter, and two half-brothers all reported observing B.H. engage in these strange behaviors, which included B.H. "humping" her stuffed animals and touching her private areas over and under her clothing. In one instance, B.H.'s maternal grandmother indicated that after observing B.H. engaging in this type of behavior, B.H. told her that, "Matt took me to a mean, mean man's house and he took pictures of me." Ultimately, in September 2002, B.H. was taken to see a nurse because she was experiencing insomnia, had a urinary tract infection, and was experiencing pain in her private parts. During her examination by the nurse, B.H. told the nurse that Haddock had touched her vagina with his hand and with his tongue. She also disclosed to the nurse that she was having trouble sleeping because of what happened at her grandmother's house - which was where Haddock lived at the time. B.H. was forensically interviewed by an interviewer that specialized in child sexual abuse cases. During the interview, B.H. explained that Haddock had touched her "potty" with his "potty" and with his tongue. The detective assigned observed the interview and indicated that it was the most compelling forensic interview of a child involving child sexual abuse that he had ever seen. He further explained that she appeared to be very honest, would tell the examiner when she did not understand a question, and became very upset emotionally when discussing the abuse.

In sum, the allegation included claims that Haddock had engaged in some sort of sexual intercourse, oral sex, and fondling of B.H.'s genitals on numerous occasions between 2001 and 2002, when B.H. was only 3 and 4 years old. ...

This evidence satisfies the court that the defendant engaged in "two or more instances" of sexual abuse when he repeatedly sexually molested his natural daughter, B.H., over a two year period of time when the child was only three and four years of age.   As such, the pattern of activity offense characteristic applies and the related five points set forth in Paragraph 36 of the Presentence Report are properly calculated within the defendant's Total Offense Level.

As explained in section I of this order, the court has found that the defendant's prior conviction upon the Oregon charge of "encouraging the sexual abuse of a minor" is a qualifying predicate conviction which triggers the application of the mandatory minimum sentence of fifteen years imprisonment to a maximum of forty years imprisonment. The defendant's sentencing guideline, applying the challenged pattern of activity offense characteristic, results in a sentencing guideline range of one hundred and eighty-eight (188) to two hundred and thirty-five (235) months imprisonment. With the application of this offense characteristic, the net increase in sentencing range above the fifteen year mandatory minimum, is eight to fifty-five months and the standard of proof for factual findings underlying sentencing enhancements of a preponderance of the evidence is applicable. *United States v. Pike*, 473 F.3d 1053, 1057 (9th Cir. 2007), *see* also *United States v. Melchor-Zaragoza*, 351 F.3d 925, 928 (9th Cir. 2003). The range of 188 to 235 months resulting from the "pattern of activity" enhancement is clearly not disproportionate to the underlying mandatory minimum sentence of fifteen years (180 months) and therefore the preponderance standard applies.[2]

The court therefore overrules defendant's objection to the application of the specific offense characteristic for pattern of activity as set forth in Paragraph 36 of the Presentence Report and confirms the defendant's sentencing guideline calculations as set forth in the Presentence Report. The total offense level is 35, the defendant's criminal history score is 3, and the applicable custody range is 188 to 235 months under the sentencing guidelines.

///

///

---

[2] The court has not addressed the application of a heightened standard of clear and convincing evidence because of the court's finding relative to the defendant's prior qualifying conviction and the applicability of the fifteen year mandatory minimum. However, the court would have made the same findings under a clear and convincing standard of proof and would have considered the six factors contemplated by the Ninth Circuit in considering disproportionate impact which may have arisen due to a clear and convincing application. *See United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000), cert. granted, judgment vacated and remanded by 121 S.Ct. 1222 (2001).

IT IS THEREFORE ORDERED that defendant's challenges to Paragraphs 36 and 76 of his Presentence Report are DENIED.

IT IS SO ORDERED.

DATED this 17th day of December, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE